Case No. 3-13-0560, The People of the State of Illinois, Anthony v. Robert Hinton v. Lorenzo Upchurch, Assignment by Benjamin Wolofsky Mr. Wolofsky, good afternoon.  The State of Illinois did not lay an adequate foundation for the admission of the recording of the jailhouse phone call at issue in this case. Though Officer English gave some testimony about why he believed that the caller was Mr. Upchurch, he had no personal knowledge about that. Moreover, and more importantly, he had no evidence or no testimony about the recording process itself. He was unable to establish that the recording process was accurate as a silent witness theory requires. There are, of course, two ways to lay a foundation for the admission of an audio recording. The first is to call a participant to the conversation and have them testify that the recording is accurate and to identify the parties on the recording. That didn't happen here. The female caller was never identified and she didn't testify. And also, Officer English wasn't a party to the call and he didn't listen to it live. The alternative way of laying a foundation is through the silent witness theory. And what that requires is a showing of several factors including the capability of the recording device, the competency of the operator, the proper operation of the recording device, the recording was preserved properly without any alterations or deletions, and then finally some evidence as to the identity of the speaker. Here, as I mentioned up front, Officer English gave some testimony as to why he believed Mr. Upchurch was the caller. He said, first of all, that he recognized Mr. Upchurch's voice from a prior experience. He gave no indication what that prior experience was. He never said when he ever heard Mr. Upchurch's voice. He never said he talked to him. He never said he talked to him on the phone or heard other phone calls involving Mr. Upchurch. So we have no personal knowledge for him being able to recognize him by voice. He also said he had some experience, and this is Officer English, he said he had some experience working in the jail where the call took place. And he said he knew from prior experience that only one person was able to make a phone call from this Max C unit at a time. However, Officer English was not in the jail at the time. He did not testify that he knew that Mr. Upchurch was in Max C. He gave no indication for how he would have known that. And he also gave no indication of the policy, that this one-at-a-time policy was even still in place years later after he worked at the jail. Was there any evidence even if that policy were still in effect? No, there wasn't anything about the policy except that it was in place at the time he previously worked in the jail sometime prior. Did Officer English give any testimony to indicate that he knew that the defendant had actually been out and about where he could make a phone call at that time? No, he didn't. There was nothing to establish that Mr. Upchurch, even if we assume that the one-at-a-time policy was in place, there was no evidence that put Mr. Upchurch as being the one inmate allowed to make a call at the time this call was placed. So we just have nothing about what was going on at the time of the call. The other thing about Officer English's testimony, he testified he was trained in using the Securids platform. That was the platform, the system that they used to record the calls. And he said he knew how to call up a call on his computer. He was able to listen to it from his computer and he was able to burn a copy to a CD. He's speaking then as an end user, someone who's able to access the information after it was already recorded. Officer English had no testimony at all about the recording process itself. He wasn't able to say anything about the capability of the device that was used. He wasn't able to say anything about whether the device for recording was in proper operation at the time. He was not able to say that the recording itself was made without any changes or alterations. Those were all the factors under the silent witness theory that he was unable to speak to. He did say that he was able to burn a copy of the recording straight to a disc without any alterations. But again, that's missing the point of the recording process itself. He's just speaking after the fact, after it was already recorded. So there's nothing from Officer English to talk about the recording process itself and whether or not it was accurate. Now the state wants to do an end around on the foundation requirement. They want to look to the content of the recording itself to say, well of course this copy was accurate. First in the brief they point to the fact that the caller uses the name Renzo. And we're dealing with Mr. Upshurst. His first name is Lorenzo. That name in and of itself is hearsay. It's an out-of-court statement being offered for its truth. And in People v. Caffey, the Supreme Court says you cannot use this hearsay of someone identifying themselves by name to identify the caller. Unlike in People v. Sangster, the case that the state cites, we don't have any sort of unique pin number being discussed. There's no voice identification of an inmate as there was in that case. All we have is this caller saying his name is Renzo. And we're dealing with a situation where someone is in prison presumably for drugs. There's certainly a potential motive to lie, to give a false name, to try and put blame on someone else for possessing the drugs at issue here. Or maybe this involves a totally different set of drugs. Officer Lieutenant Kidwell came in and testified about the term slab, meaning 28 grams of crack cocaine. It's a common drug term, at least according to Lieutenant Kidwell. So the fact that someone here on this call is talking about a slab doesn't give us any indication that we're actually dealing with this case, with Mr. Upchurch being the person on the phone call. So really, what it comes down to is that there's no evidence connecting Mr. Upchurch to this recording. And again, there's nothing saying that the recording process itself was accurate. And for those reasons, this was an inadequate foundation for the admission of this phone call. Now, this issue was properly preserved. It was objected to a trial. It was the subject of a motion in limine, and it was included in the post-trial motion. And so the burden is on the state to show that it was harmless error. And I don't think they can do that here because of the importance of this piece of evidence in the state's case. In closing, the state got up and argued that this phone call was tantamount to an admission of guilt, that the caller was basically acknowledging possession of the slab, of the 28 grams of crack cocaine. When they're doing that, they're arguing that this is the ballgame for them, that this is what shows they have the right person. If you take that away, there's not much left. There was no forensic testing of either of the items in which the controlled substances were found. There was a shaker, and there was a sock. They didn't check for fingerprints. They didn't check for DNA. And the fact of the matter is Mr. Edwards was acquitted of the marijuana charge. There was marijuana found, and there was crack found separately in the same bedroom. And the jury did not find enough evidence to prove beyond a reasonable doubt he possessed the marijuana. The marijuana wasn't ever discussed on the phone call. Only the crack was discussed on the phone call. So the jury, who asked to hear this during deliberations and they heard it twice, is hearing someone popping to possessing the crack. They don't hear anything about the marijuana, and then they find inadequate proof as to the marijuana and sufficient proof as to the crack. So we think that the erroneous admission of this recording was certainly a contributing factor to the verdict and, therefore, not a harmless error. Was there any other evidence with regard to the cocaine that was not available with regard to the marijuana? No, Your Honor. Everything about the situation was the same as the two items. They were found in the same bedroom. The other evidence that the State relied on was Mr. Upchurch's presence in the room at the moment the search warrant was executed, which applies to then both items. And then there were a couple of pieces of mail in a backpack in the room, and that was what they used to show the constructive possession. So the evidence was the same as to both the crack and the marijuana, with the one exception of this phone call. And, obviously, the jury wanting to hear it twice in deliberations suggests they were really putting a lot of weight in the call in finding him guilty of the possession of the crack cocaine. So for those reasons, we think that this is not a harmless error, and we, therefore, ask this Court to reverse Mr. Upchurch's conviction and remain for a new trial. Thank you. Any other questions? Thank you. Mr. Hanson, good afternoon. Good afternoon, Your Honors. May it please the Court, Counsel. Your Honors, I'll be pretty brief in my reply here. I think my written brief really does cover it. Gilliland Rules Evidence 901A and 901B-5 say this call was properly authenticated. Overwhelming evidence of guilt, we argue, and harmless error. First of all, 901B-5 says that identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording by opinion, based upon hearing the voice at any time under circumstances connecting it to the speaker. This officer here said, I knew the guy's voice, and I could recognize it also. What were the circumstances connecting him to the speaker? The officer knew what Lorenzo Upchurch's voice was like. That connected it to the speaker on that recording. You said, under circumstances connecting it to the speaker. Connecting it with the alleged speaker. Hearing the voice at any time. He said he was familiar with the defendant from hearing his voice before, and then he heard it this time. Those together are the circumstances connecting the voice to the speaker. I'm sorry. I thought that that would mean that maybe he should say when he heard it, how he heard it. That goes to the weight, not the admissibility. He didn't say that. I can't argue he did. Your Honor, there's simply no question here that this was truly Lorenzo Upchurch on the phone, on the phone, on the recording. Why is there no question? Pardon me? Why is there no question of that? I think when you look at all the evidence, you will easily come to that conclusion, I'm saying based on the evidence here. The Sangster case dealt with a similar argument, and they said the defendant there argued the absence of a proper foundation because no witness testified of the capability of the device, the proper operation, et cetera. The appellate court rejected that. It said the ability of the defendant to make the call on its recording provided sufficient evidence the system worked properly. And then later it said when a defendant presents no actual evidence of tampering, substitution, or contamination, the prosecution need only establish a probability that those did not occur. Thus, any deficiencies would go to the weight, not to the admissibility. If you will look at this, I'm confident, Your Honors, if you will look at all the evidence here with the testimony, and then, of course, he calls himself Renzo, his name is Lorenzo, and he was nailed for, arrested for a slab, which is approximately 28 ounces of cocaine, and he says, you know, I had the slab. That woman on the other line asked him something about it,  Did the state identify the woman? It did not. They had the phone number. I believe they did. I believe they did. Didn't identify the woman. But we're not terribly concerned with who that person was. We're concerned with is this recording containing the defendant's voice saying the words the officer heard. You know, I frequently wonder, would you feel comfortable going to prison on this kind of information, this kind of evidence? A, I would never feel comfortable going to prison. B, I have not the slightest hesitancy in saying this is overwhelming evidence. There is no question, Your Honor, it's my strong contention in a reasonable world, that that was Lorenzo, the defendant, saying what he said on the phone. Again, Sangster says, you know, when there's no actual evidence of any kind of substitution or contamination, prosecution, you'd only establish a probability. Thus, any deficiencies would go to the weight, not the admissibility. Yes, you should, you know, I think the question's a little awkward in that would you feel comfortable. I don't think you ever would. But I think you would feel that you were not railroaded, that you were justifiably convicted on evidence like this. Absolutely, it's from your own mouth. There is zero evidence in here, Your Honors, that it came from inmate Jones or somebody else claiming to be Lorenzo Upchurch. Okay, but that would be evidence that the defendant would have to present, and it's the state's burden, is it not? State's burden, and we have Sangster adding that, you know, when the defendant presents no evidence of tampering, substitution, what the state did has to look, you look at the adequacy of the state's evidence, first of all, under those two rules I cited, and under the Collins standard. And when the defendant presents no evidence, that makes the state's case easier. You know, and the defendant doesn't have to, obviously. But, you know, there are hard choices to be made in life and in criminal cases. And if you have good defense evidence, maybe you ought to propound it. You don't have to. It can't be held against you that you didn't, but it might be in your best interest to do so. Otherwise, you're letting the state's evidence go unrebutted. That really concludes my comments, Your Honor. It's all in the brief, and we rely heavily on those two rules and the Sangster opinion, which is directly in play. Thank you. Thank you, Mr. Hanson. Mr. Woloski. Thank you, Your Honor. I just have a couple of real brief points on rebuttal. First, the state's convinced that this was Mr. Upchurch, and that very well may be the case. As the proponent of this evidence, it's the state's burden to lay the foundation. Here, they left a lot of dots unconnected about the accuracy of this call. They could have called someone who worked in the jail at the time, familiar with the recording process, to simply say, yes, this machine was operating properly at the time. There's a foundation for the accuracy. That's all they needed, is somebody to say, I am familiar with how this recording process works. It was working properly at the time. In Sangster, you've got a situation where the person from the jail comes in and testifies. I am sure this is him because I'm familiar with how the system operates. The defendant there was required to put in the personal identification number, and there was a voice matching system all in place before the call could even be placed. So there were those sort of aspects about reliability, about accuracy of the recording process. So this is a much different situation than in Sangster. Here, we just don't have any other information to rely on. And then finally, as to rule of evidence 901B5, as Justice McDade pointed out here, there was just no evidence for how Officer English knew what Mr. Upchurch's voice sounded like. The state recalled him on the second day of trial to ask him, are you familiar with his voice? He said yes. The state did not ask the follow-up question, how are you familiar with his voice? Had they done that, that would have been an adequate basis to say, here's how I know that it's Mr. Upchurch. So in this case, it's not about whether the state's convinced that this is Mr. Upchurch on the phone, it's whether they laid the foundation at trial. And here, there were simply too many unasked questions about the foundation for this to have been adequate. Thank you very much. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand at a brief recess for our panel.